**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 2001**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re OVERLAND PARK
FINANCIAL CORPORATION,

      Debtor,

----------------

OFFICE OF THRIFT SUPERVISION,

      Appellee and Cross-Appellant,

v.

OVERLAND PARK FINANCIAL
CORPORATION,

      Appellant and Cross-Appellee.

Nos. 99-3176 & 99-3177

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 98-CV-2061)**

Benjamin F. Mann (Kathryn B. Bussing with him on the briefs) of Blackwell
Sanders Peper Martin LLP, Kansas City, Missouri, for Appellant and Cross-
Appellee.

Martin Jefferson Davis (Carolyn J. Buck, Thomas J. Segal, Elizabeth R. Moore,
and Richard L. Rennert with him on the briefs), Office of Thrift Supervision,
Washington, D.C., for Appellee and Cross-Appellant.

Before **BRORBY, POLITZ**,[*] and **BRISCOE**, Circuit Judges.

**BRORBY**, Circuit Judge.

Before us is Overland Park Financial Corporation's appeal, and the Office of Thrift Supervision's cross-appeal, from a district court order that reversed the bankruptcy court's holding. These cases raises the issue, as a matter of first impression, of this circuit's interpretation of 11 U.S.C. §365(o).

BACKGROUND

The facts of this case are well documented and not in dispute. *See Office of Thrift Supervision v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*, 232 B.R. 215, 216-18 (D. Kan. 1999). In 1978, Overland Park Financial Corporation ("Overland Financial") incorporated for the purpose of acquiring Overland Park Savings & Loan Corporation ("Overland Savings & Loan"). In 1979, Overland Financial applied to the Federal Savings and Loan Insurance Corporation for approval of the acquisition.[2] The Federal Home Loan Bank

---

[*] The Honorable Henry Politz, United States Circuit Judge for the Fifth Circuit, sitting by designation.

[2] The Federal Savings & Loan Insurance Corporation's approval was required because it insured Overland Savings & Loan's deposits at that time.

Board, acting as the operating head of the Federal Savings & Loan Insurance Corporation, conditionally approved the acquisition.

To satisfy one of the conditions, Overland Financial stipulated in writing to the Federal Savings & Loan Insurance Corporation that Overland Financial would maintain the net worth of Overland Savings & Loan, and, if necessary, infuse sufficient additional capital. Overland Financial's stipulation provided:

> Overland Park Financial Corporation, a Missouri corporation, hereby stipulates to the Federal Savings and Loan Insurance Corporation (the "Corporation") that it will cause the net worth of Overland Park Savings and Loan Association, Overland Park, Kansas, to be maintained at a level consistent with that required by Section 563.13(b) of the Rules and Regulations for Insurance of Accounts, as now or hereafter in effect, and where necessary, that it will infuse sufficient additional equity capital to effect compliance with such requirement in a form satisfactory to the Corporation.

The stipulation was signed by Overland Financial's president. Overland Financial then acquired Overland Savings & Loan.

In June 1990, the Office of Thrift Supervision[3] ("Thrift Supervision")

---

[3] The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") abolished the Federal Home Loan Bank Board, and transferred to Thrift Supervision and its Director the role of primary federal regulator of federally insured savings associations. *See* 12 U.S.C. § 1462a(e). Congress also transferred the Federal Savings & Loan Insurance Corporation's enforcement powers to Thrift Supervision. *See* 12 U.S.C. § 1818(b). Title 12 U.S.C. § 1464(s)(1)(B) mandates the Director of Thrift Supervision to require all savings

advised Overland Savings & Loan it would fail to meet its minimum capital requirements. In turn, Overland Savings & Loan requested Overland Financial to make a capital contribution pursuant to the stipulation. Overland Financial refused to infuse capital at that time, but left open the possibility of future contribution. No such capital infusion has been made to date.

In November 1992, Thrift Supervision appointed Resolution Trust Corporation as receiver for Overland Savings & Loan.[4] At the time of receivership, Overland Savings & Loan reported a risk-based deficiency of $4,073,000. Overland Financial manages the property and affairs of the bankruptcy estate as debtor-in-possession. *See* 11 U.S.C. § 1107 (stating a debtor-in-possession, subject to certain limitations or exceptions, has the rights, powers, and duties of a trustee serving under Chapter 11).

---

and loans to achieve and maintain adequate capital by "using such other methods as the Director determines to be appropriate."

[4] Congress established Resolution Trust Corporation, a federally chartered corporation, to act as conservator or receiver for federally insured thrifts that failed between 1989 and 1995. 12 U.S.C. § 1441a(b)(1),(3). After the Resolution Trust Corporation terminated at the end of 1995, the Federal Deposit Insurance Corporation assumed the role of conservator or receiver in Resolution Trust Corporation's remaining cases. 12 U.S.C. § 1441a(m)(1).

PROCEDURAL HISTORY

In July 1994, twenty months after Thrift Supervision placed Overland Savings & Loan into receivership, Overland Financial filed a Chapter 11 bankruptcy petition. In response to Overland Financial's bankruptcy petition, Thrift Supervision filed an unsecured priority proof of claim, alleging Overland Financial breached its capital maintenance commitment, and asserting its rights under 11 U.S.C. § 365(o) (1994) or 11 U.S.C. § 507(a)(8).[5] Thrift Supervision sought $4,073,000, the amount Overland Savings & Loan reported as its risk-based capital deficiency on the date of receivership, in its proof of claim. Overland Financial filed an objection to Thrift Supervision's proof of claim, and filed a proposed Plan of Reorganization. The Plan of Reorganization proposed a liquidation of the estate, with its assets to be distributed among the allowed claims. Subsequently, Thrift Supervision filed a motion for immediate cure and for dismissal of the case under 11 U.S.C. §§ 365(o) and 1112(b)(2).

In December 1995, a Partial Pretrial Order was filed which consolidated Thrift Supervision's proof of claim with its motion for immediate cure under 11

_____

[5] Thrift Supervision's proof of claim was filed pursuant to 11 U.S.C. § 507(a)(8), now amended as 11 U.S.C. § 507(a)(9). We will refer to the current 11 U.S.C. § 507(a)(9) provision.

U.S.C. § 365(o). The order set forth Overland Financial's defenses to Thrift Supervision's motion for immediate cure.[6]

The bankruptcy court denied Thrift Supervision's motion for immediate cure. *In re Overland Park Fin. Corp*., 217 B.R. 879, 890-91 (Bankr. D. Kan. 1998). The court held Overland Financial's informal capital maintenance stipulation was not an enforceable executory contract, and therefore not subject to 11 U.S.C. § 365(o). *Id.* at 886, 890. As a result of its holding, the bankruptcy court ruled on only the first of Overland Financial's defenses without further considering the remaining defenses. Thrift Supervision appealed to the district court.

The district court reversed the bankruptcy court.[7] *In re Overland Park Fin.*

---

[6] Overland Financial's defenses, articulated in the bankruptcy proceedings and in appellant's brief, are: (1) the stipulation is not an enforceable contract; (2) the stipulation terminated when Overland Savings & Loan was seized by Thrift Supervision; (3) Thrift Supervision cannot maintain a private right of action for damages to enforce a regulatory requirement; (4) Section 365(o) does not apply in a Chapter 11 liquidation. Overland Financial raises the additional defenses of estoppel and unclean hands due to Thrift Supervision's lack of good faith in dealing with Overland Financial's efforts to recapitalize Overland Savings & Loan and because its arbitrary change of allowed accounting practices contributed to the existence of a capital deficiency.

[7] The district court limited the issue on appeal to Thrift Supervision's 11 U.S.C. § 365(o) claim, and struck Overland Financial's attempt to raise additional

*Corp.*, 232 B.R. at 229. The district court held Overland Financial's net worth stipulation was a capital maintenance commitment subject to 11 U.S.C. § 365(o), and ordered Overland Financial to cure the deficit immediately. *Id.* at 229. Therefore, the district court reasoned all issues relating to Thrift Supervision's proof of claim were moot. *Id.* at 228. In a footnote, the district court raised the specter Thrift Supervision may lack standing to pursue its proof of claim. *Id.* at 228 n.23. The court reasoned Thrift Supervision was not the agency with which Overland Financial entered into the agreement. The district court suggested the right properly belonged to Resolution Trust Corporation (now Federal Deposit Insurance Corporation) as the "conservator" of Overland Savings & Loan. The district court remanded to the bankruptcy court for further proceedings consistent with its opinion. *Id.* at 229. Both parties appealed.

Overland Financial raises two issues on appeal: first, whether the net worth maintenance stipulation is a capital maintenance commitment subject to 11 U.S.C. §365(o), and second, whether Overland Financial is obligated to immediately cure the capital deficit. Thrift Supervision, in its cross-appeal, requests this court to

issues on appeal due to its failure to file a cross-appeal. The district court also declined to consider Overland Financial's defenses because the bankruptcy court did not reach those issues.

-7-

order Overland Financial to effect the maximum cure possible, using all the bankruptcy estate assets. In addition, Thrift Supervision argues it has standing to assert and enforce its proof of claim, and the district court erred in holding Thrift Supervision's proof of claim moot.

## JURISDICTION

We have jurisdiction over this matter, pursuant to 28 U.S.C. §158(d), as a final, appealable order from the district court. "[A] decision of the district court on appeal from a bankruptcy judge's final order is not itself final if the decision remands the case to the bankruptcy judge for significant further proceedings." *Homa Ltd. v. Stone (In re Commercial Contractors, Inc.)*, 771 F.2d 1373, 1375 (10th Cir. 1985) (quotation marks and citation omitted).

The district court reversed the bankruptcy court, and remanded the case for further proceedings consistent with its opinion. In this case, the district court's decision is final, despite the remand to the bankruptcy court, because the district court left the bankruptcy court with no "significant further proceedings" to conduct. *Id.* at 1373. We have recognized the district court's order of remand is not final when the bankruptcy court is required to perform "more than a mere ministerial duty" or it involves the "exercise of considerable judicial discretion.'"

*State Bank of Spring Hill v. Bucyrus Grain Co. (In re Bucyrus Grain Co.),* 905

F.2d 1362, 1366 (10th Cir. 1990) (quotation marks and citations omitted). As

both parties agree, the bankruptcy court's only task on remand was to order

Overland Financial to immediately cure the deficit under its capital maintenance

stipulation without considering Overland Financial's defenses.


## DISCUSSION

*11 U.S.C. § 365(o)*

At the core of this case is the interpretation to be given to 11 U.S.C.

§365(o). The section provides, in relevant part:

> In a case under chapter 11 ..., the trustee shall be deemed to have
> assumed, ... and shall immediately cure any deficit under, any
> commitment by the debtor to the Federal Deposit Insurance
> Corporation, the Resolution Trust Corporation, the Director of the
> Office of Thrift Supervision ... or its predecessors ... to maintain the
> capital of an insured depository institution, and any claim for a
> subsequent breach of the obligations thereunder shall be entitled to
> priority under section 507. This subsection shall not extend any
> commitment that would otherwise be terminated by any act of such
> an agency.

Notably, Congress intended 11 U.S.C. §365(o) "'to prevent institution-affiliated

parties from using bankruptcy to evade commitments to maintain capital reserve

requirements of a Federally insured depository institution.'" *Resolution Trust*

*Corp. v. Firstcorp, Inc. (In re Firstcorp, Inc.)*, 973 F.2d 243, 246 (4th Cir. 1992)

(quoting H.R.Rep. No. 681(I), 101st Cong., 2d Sess. 179 (1990), reprinted in

1990 U.S.C.C.A.N. 6472, 6585).

Our review of the district court's interpretation of 11 U.S.C. §365(o) is *de novo*. *Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir. 1999). When reviewing an issue that is a question of law, the standard of review on appeal is the same as that applied initially by the trial court. *Id.* We will not give deference to the district court's opinion. *Id.*

A. *"Commitment" to maintain capital*

In any case of statutory construction, the starting point of our analysis must begin with the language of the statute itself. *Chickasaw Nation v. United States*, 208 F.3d 871, 876 (10th Cir. 2000), *petition for cert. filed*, 69 U.S.L.W. 3269 (No. 00-507) (Oct. 3, 2000). When interpreting statutory language, this court "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *True Oil Co. v. Commissioner of Internal Revenue*, 170 F.3d 1294, 1299 (10th Cir. 1999) (quotation marks and citation omitted). The meaning of the words in the statute "must be construed in their ordinary, everyday sense." *Chickasaw*, 208 F.3d at 876 (quotation marks and citation omitted). With this framework of statutory construction in mind, we must resolve whether Overland Financial's net worth maintenance stipulation

constitutes a capital maintenance "commitment" pursuant to 11 U.S.C. §365(o). We think it does.

The crux of Overland Financial's argument and the bankruptcy court's decision is a "commitment" to maintain capital, under 11 U.S.C. §365(o), must take the form of an enforceable contract. Overland Financial argues, and the bankruptcy court agreed, the stipulation is informal and unenforceable because it pre-dates the 1984 regulation[8] requiring "formal net worth agreements," lacks consideration, and is "open-ended." *Overland Park,* 217 B.R. at 884-85. According to Overland Financial, the pre-1984 stipulations were "merely acknowledgement [sic] by the holding company of the regulatory requirement that the savings association's capital must be maintained at a minimum level in order for the holding company to continue its operation of the savings association." We disagree with Overland Financial's strained reading of the statute and its attempt

---

[8] In 1984, the Federal Home Loan Bank Board promulgated a final rule requiring an individual or group of individuals, applying for a *de novo* savings and loan institution, to sign an agreement personally guaranteeing the net worth maintenance of the savings and loan. 49 Fed. Reg. 41237 (Oct. 22, 1984). Overland Financial draws a line between pre- and post-1984 stipulations. Overland Financial argues pre-1984 stipulations are informal and unenforceable, but in contrast, post-1984 stipulations are "formal" net worth maintenance agreements "which look[] like real contracts or agreements." Overland Financial asserts its "informal stipulation" pre-dates 1984.

-11-

to re-characterize the stipulation as a "mere acknowledgment."[9]

The plain language of 11 U.S.C. §365(o) reads "any commitment by the debtor ... to maintain the capital ...." Based on our reading of this particular statutory language, in the context of the statute as a whole, it is apparent that nowhere in 11 U.S.C. § 365(o) does Congress mention the commitment must be contractual, executory, formal, or post-1984. Congress undisputedly knew how to include "executory" or other limiting language, but Congress did not do so in § 365(o). *Compare* 11 U.S.C. § 365(a)-(n) *with* 11 U.S.C. § 365(o). Based on the plain language, we refuse to import Overland Financial's constrictive requirements into the statute's express language. It is well recognized by this circuit that in drafting legislation, we assume Congress says what it means. *Sundance Assoc., Inc. v. Reno*, 139 F.3d 804, 808 (10th Cir. 1998). In 11 U.S.C. § 365(o), Congress clearly said "any commitment."

"When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary." *True Oil*, 170 F.3d at 1299

---

[9] Overland Financial candidly acknowledges courts will reject an interpretation of a statute that produces an absurd result. *See United States v. Brown*, 333 U.S. 18, 27 (1948) (statutory interpretation should not lead to "patently absurd consequences").

-12-

(quotation marks and citation omitted). The common definition of "commitment" is an "'[a]greement or pledge to do something.'" *Firstcorp*, 973 F.3d at 249 n.5 (quoting Black's Law Dictionary 248 (5th ed. 1979)). The facts of this case show Overland Financial's stipulation is well within the boundaries of this definition, and unequivocally constitutes a "commitment." First, the language employed in the stipulation is mandatory and evinces Overland Financial's understanding it is obligated to maintain, and if necessary infuse, capital in order to ensure Overland Financial's compliance with federal regulatory code. Overland Financial even admits it understood, at the time of the signing, the stipulation was an integral condition precedent to the Federal Home Loan Bank Board's approval of the acquisition. In other words, Overland Financial could not have acquired Overland Savings & Loan without the stipulation, and the President of Overland Financial personally signed the stipulation. Thereafter, Overland Financial had the privilege of operating Overland Savings & Loan from 1979 to 1992. In reviewing this aggregated evidence, we hold Overland Financial provided, in its stipulation, a unilateral pledge to maintain Overland Savings & Loan's capital. Therefore, Overland Financial's stipulation is a binding commitment. We see no reason why Overland Financial should not be held to its commitment absent a defense.

B. *Assumption of cure*

Our second issue of statutory interpretation requires us to determine the time in which Overland Financial's duty to assume the cure matures and attaches. Again, we find *Firstcorp* well-reasoned and persuasive. In *Firstcorp*, the acquisition of a savings and loan was conditioned on the holding company's maintenance of capital at or above a specified level. 973 F.2d at 244. The holding company ultimately refused to infuse capital to cure the savings and loan subsidiary's capital deficiency. *Id.* at 245. Thrift Supervision served the holding company with a notice of charges and hearing and with a temporary order to cease and desist. *Id.* Shortly after the agency's action, the holding company filed a Chapter 11 bankruptcy petition. *Id.* Two days after filing for bankruptcy, Thrift Supervision appointed Resolution Trust Corporation as receiver for the savings and loan. *Id.* The Fourth Circuit held:

> [A]ssumption and cure under § 365(o) are prerequisites to obtaining Chapter 11 protection. If a debtor cannot "immediately" cure a deficit under a capital maintenance commitment that exists at the time of a bankruptcy filing, then § 365(o) requires that debtor to proceed not under Chapter 11 but under Chapter 7, to which § 365(o) does not apply.

*Id.* at 247. Consistent with the Fourth Circuit, we hold before a debtor may proceed with Chapter 11, and acquire Chapter 11 protection, the debtor's commitment to assume and cure its capital deficit must be satisfied.

OVERLAND FINANCIAL'S DEFENSES

-14-

Despite the five years of litigation in this case, Overland Financial has not had the opportunity to be heard by a court on each of its defenses. As we previously stated, the bankruptcy court ruled in favor of Overland Financial, thereby obviating the need to consider further defenses. Subsequently, the district court declined to address the remaining defenses because the bankruptcy court did not address the defenses in the first instance. On appeal, Thrift Supervision believes Overland Financial's remaining defenses should be resolved simply because Thrift Supervision briefed the defenses. However, as a general rule, we do not consider issues not passed upon below. *R. Eric Peterson Constr. Co. v. Quintek, Inc. (In re R. Eric Peterson Constr. Co.)*, 951 F.2d 1175, 1182 (10th Cir. 1991). We hold the bankruptcy court is the appropriate initial forum to hear and address Overland Financial's remaining defenses not addressed in this opinon. Based on our resolution at this time, we decline Thrift Supervision's invitation to fashion an immediate cure remedy using all the bankruptcy estate assets.

STANDING

We must determine whether Thrift Supervision has standing to pursue its unsecured priority claim, filed pursuant to 11 U.S.C. § 365(o) or § 507(a)(9). "We review de novo issues such as standing that are prerequisites to this court's jurisdiction." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab.*

*Servs.*, 958 F.2d 1018, 1021 (10th Cir.1992).

In order to understand Thrift Supervision's standing to pursue its capital maintenance claim, it is necessary to reiterate briefly its statutory authority. In FIRREA, Congress vested Thrift Supervision with broad federal regulatory and enforcement authority over savings and loans. *See Franklin Sav. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1136 (10th Cir. 1991), *cert. denied*, 503 U.S. 937 (1992). In particular, the Director of Thrift Supervision "shall provide for the examination, safe and sound operation, and regulation of savings associations." 12 U.S.C. §§ 1462(1), 1463(a)(1). Congress vested Thrift Supervision with the powers formerly charged to the Federal Home Loan Bank Board, and provided Thrift Supervision with the Federal Savings & Loan Insurance Corporation's enforcement powers. *See* 12 U.S.C. §§ 1462a(e), 1818(b). Thus, Thrift Supervision succeeded the two prior agencies, and became the new bank regulatory agency responsible for the supervision and oversight of all thrift institutions. 12 U.S.C. §§ 1462a(e), 1463(a)(1).

Based on Thrift Supervision's statutory succession to the two agencies involved with the stipulation, we hold Thrift Supervision is entitled, if not

obligated, to pursue its capital maintenance claim.[10]  It seems only logical an agency endowed with regulatory and enforcement power to ensure the safety, soundness and compliance of the thrift industry would be rendered virtually impotent without its ability to pursue and, perhaps, rectify a thrift's capital deficit.  *See generally Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998) (explaining "debt" is a "liability on a claim"; "claim" is defined as a "right to payment"; and a "right to payment ... is nothing more nor less than an enforceable obligation.") (quotation marks and citation omitted).

## MOOTNESS

The district court concluded at the end of its opinion that Overland Financial's duty to immediately cure renders Thrift Supervision's proof of claim moot.  *In re Overland Park Fin. Corp.*, 232 B.R. at 228.  We review the issue of mootness *de novo*.  *Boullioun Aircraft Holding Co. v. Smith Mgmt. (In re Western Pac. Airlines, Inc.)*, 181 F.3d 1191, 1194 (10th Cir. 1999) (quoting *Anderson v. United States Dep't of Health & Human Serv.*, 3 F.3d 1383, 1384 (10th Cir. 1993)).  In general, "a federal court cannot give opinions absent a live case or controversy before it."  *In re Western Pac.*, 181 F.3d at 1194 (citing *Mills v.*

---

[10]  Neither Resolution Trust Corporation nor Federal Deposit Insurance Corporation is a party to this litigation.  We therefore will not address their standing, as Overland Savings & Loan's receiver, to pursue a proof of claim.

*Green*, 159 U.S. 651, 653 (1895)).  A case is moot when it is "impossible for the court to grant 'any effectual relief whatever' to a prevailing party."  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills*, 159 U.S. at 653).  A live controversy continues to exist in this case because, as we have already discussed, the bankruptcy court must consider Overland Financial's remaining defenses, and until such time as cure is rendered, if at all, Thrift Supervision's proof of claim is not moot.

Accordingly, we hold Thrift Supervision has standing to enforce its proof of claim, we **AFFIRM** the district court's holding the stipulation is a binding commitment subject to 11 U.S.C. § 365(o) cure, **REVERSE** the district court's mootness determination, and **REMAND** to the district court with instructions to remand to the bankruptcy court to further consider Overland Financial's defenses not addressed in this opinion.