In re OVERLAND PARK FINANCIAL CORPORATION, Debtor.

Office of Thrift Supervision, Appellant,

v.

Overland Park Financial Corporation, Blackwell Sanders Peper Martin LLP, Anne P. Henry, U.S. Trustee, and Carl R. Clark, Chapter 11 Trustee, Appellees.

Bankruptcy No. 94–21190–11–JTF. Civ.A. No. 03–2070–KHV.

United States District Court, D. Kansas.

Oct. 23, 2003.

issue, we find it premature to consider this argument.

Martin Jefferson Davis, Office of Thrift Supervision, Washington, DC, Melanie D. Caro, Office of United States Attorney, Kansas City, KS, for Appellant.

Benjamin F. Mann, Kathryn B. Bussing, Blackwell, Sanders, Peper, Martin LLP, Kansas City, MO, for Appellee.

Carl R. Clark, pro se, Overland Park, KS, for Appellee.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

The Office of Thrift Supervision ("OTS") appeals the *Order And Journal Entry* *Concerning September 26, 2002 Evidentiary Hearing* (Doc. # 444), which the United States Bankruptcy Court for the District of Kansas entered November 27, 2002 in Case No. 94–21190–11–JTF. The bankruptcy court ruled that on the facts of this case, 11 U.S.C. § 365(*o*) does not preclude the debtor from paying the fees of its former counsel, Blackwell Sanders Peper Martin LLP ("Blackwell Sanders"), and its former representative, Anne P. Henry. On appeal, the OTS argues that Section 365(*o*) requires the debtor to effect the "maximum cure possible" of its capital maintenance deficit before it can pay administrative fees and expenses. The OTS urges this Court to reverse the bankruptcy court ruling and require Blackwell Sanders and Henry to return monies which they have already received from the bankruptcy estate. For reasons stated below, the Court vacates its decision to exercise jurisdiction over this interlocutory appeal.

### Procedural History

The facts of the case are well documented and not in dispute. *See In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1249–50 (10th Cir.2001); *In re Overland Park Fin. Corp.*, 232 B.R. 215, 216–218 (D.Kan.1999); *In re Overland Park Fin. Corp.*, 217 B.R. 879, 881–83 (Bankr.D.Kan.1998).

In 1978, Overland Park Financial Corporation ("Financial") incorporated for the purpose of acquiring Overland Park Savings & Loan Corporation ("OPSL"), a Kansas thrift institution. Because the Federal Savings and Loan Insurance Corporation ("FSLIC") insured the deposits of OPSL, Financial was required to obtain FSLIC approval for the proposed acquisition. In 1979, the FSLIC approved the acquisition subject to a stipulation by Financial to maintain the net worth of OPSL. In November of 1992, the OTS put OPSL

in receivership because Financial had not maintained minimum capital pursuant to the stipulation.

On July 1, 1994, Financial filed for bankruptcy protection under Chapter 11. On December 12, 1994, based on an alleged breach of the capital maintenance stipulation, the OTS filed an unsecured proof of claim in the amount of $4,073,000.00. On January 17, 1995, Financial objected to the OTS proof of claim and filed a plan of reorganization which proposed liquidation of the estate with assets to be distributed among allowed claims.

On August 10, 1995, the OTS asked the bankruptcy court to require Financial to immediately cure its capital maintenance deficit pursuant to 11 U.S.C. § 365(o).[1] *See* Doc. # 103 in Case No. 94–21190–11–JTF. The parties stipulated that Financial did not have sufficient assets to cure the deficit.[2] On February 5, 1998, the bankruptcy court denied the OTS motion, finding that the capital maintenance stipulation was not an enforceable contract and was therefore not subject to Section 365(o). *In re Overland Park Fin. Corp.*, 217 B.R. at 886–90.

On March 31, 1999, this Court reversed the bankruptcy court decision, holding that Section 365(o) required Financial to immediately cure the deficit under its capital maintenance stipulation. *See In re Overland Park Fin. Corp.*, 232 B.R. 215, 225–28 (D.Kan.1999). The Court further held that until Financial fulfilled its capital maintenance obligation, it could not proceed under Chapter 11. *See id.* at 228. The Court found moot any issue regarding whether the OTS proof of claim should be allowed, stating as follows:

> The parties … agree that a determination requiring Financial to comply with Section 365(o)'s immediate cure requirement would exhaust the bankruptcy estate and make it impossible for Financial to effectuate a plan [of] reorganization. Also, OTS acknowledges that it incurred no losses that are compensable under Financial's stipulation to maintain OPSL's capital. Therefore it appears to the Court that its holding with respect to the duty to cure renders moot any issue regarding the allowance of OTS's proof of claim.

*Id.* at 228. The Court remanded the case to the bankruptcy court for further proceedings not inconsistent with its opinion. *Id.* at 229.

On January 5, 2001, the Tenth Circuit Court of Appeals affirmed this Court's decision in part, holding that absent a valid defense to the OTS proof of claim, Section 365(o) requires the debtor to assume and cure its capital maintenance commitment before it may proceed with Chapter 11 and acquire Chapter 11 protection. *See In re Overland Park Fin. Corp.*, 236 F.3d 1246,

---

**1.** Section 365(o) provides:

[i]n a case under chapter 11 … the trustee shall be deemed to have assumed (consistent with the debtor's other obligations under section 507), and shall immediately cure any deficit under, any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution, and any claim for a subsequent breach of the obligations thereunder shall be entitled to priority under section 507. This subsection shall not extend any commitment that

would otherwise be terminated by any act of such an agency.

11 U.S.C. § 365(o).

**2.** It appears that the bankruptcy estate is currently worth about $270,000.00. As of August 29, 2003, the debtor's monthly financial report showed that it had total cash assets in the amount of $71,860.44. *See* Doc. # 488 in Case No. 94–21190–11–JTF. In addition, the Resolution Trust Corporation holds additional tax refunds, in the amount of $197,280.00, in trust. *See Overland Park*, 232 B.R. at 218.

1251–53 (10th Cir.2001). The Tenth Circuit reversed on the mootness issue, finding that the bankruptcy court should consider the debtor's remaining defenses to the OTS proof of claim. *Id.* at 1253–55. The Tenth Circuit remanded the case to this Court, with instructions to remand to the bankruptcy court to further consider those remaining defenses.

On October 17, 2001, Financial filed a motion asking the bankruptcy court to convert the case to one under Chapter 7. *See* Doc. # 376 in Case No. 94–21190–11–JTF. Financial asserted that although it still believed that it had valid defenses to the OTS proof of claim, it wanted to convert the case in order to maximize the estate for the benefit of creditors.[3] *See* Doc. # 390 at 4 in Case No. 94–21190–11–JTF. The OTS objected, asserting that the case involved "extreme circumstances" which justified denying the motion. *See* Doc. # 384 in Case No. 94–21190–11–JTF. Specifically, the OTS argued that Financial sought to convert for an improper purpose, *i.e.* to avoid the Tenth Circuit mandate that absent a valid defense, Section 365(*o*) applies to the debtor's capital maintenance obligation. *See id.* at 2. The OTS also argued that allowing the debtor to convert would further the debtor's abuse of the bankruptcy process and circumvent the congressional policy behind Chapter 11 and Section 365(*o*). The OTS asserted that if the bankruptcy court allowed the conversion, the OTS would allege a new legal theory in the Chapter 7 case—that because the debtor initially filed the case under Chapter 11, the debtor was automatically deemed to have assumed the capital maintenance obligation under Section 365(*o*) and that obligation was entitled to first priority under Section 507(a)(1). *See* Doc. # 384 at 16 in Case No. 94–21190–11–JTF.

On February 13, 2002, the bankruptcy court overruled Financial's motion to convert. *See* Doc. # 398 in Case No. 94–21190–11–JTF. The bankruptcy court noted that if it converted the case, the debtor would argue that Section 365(*o*) did not apply. *See* Doc.# 390 at 17 in Case No. 94–21190–11–JTF. The bankruptcy court concluded that in light of the Tenth Circuit ruling, "this case should stay in Chapter 11 and proceed to determine the four defenses that were raised." *Id.* The bankruptcy court did not further elaborate the reasons for its ruling.

Sometime before February 22, 2002, Henry—who was Financial's only representative—resigned from her position, leaving no one to make decisions for Financial.[4] *See* Doc. # 392 at ¶¶ 9–10 in Case No. 94–21190–11–JTF.

On February 22, 2002, Financial asked the bankruptcy court to reconsider its order overruling the motion to convert. *See* Doc. # 392 in Case No. 94–21190–11–JTF. Financial asserted that it faced two possible outcomes in the case: "(a) it would win on its defenses against [the OTS], but expend all of its assets on administrative expenses to the detriment of the other creditors; or (b) it would lose on its defenses against the OTS and have to convert to Chapter 7." *Id.* at 1–2. In the alternative, Financial asked the bankrupt-

---

**3.** Section 1112(a) of the Bankruptcy Code provides that the debtor may convert a Chapter 11 case to one under Chapter 7 unless:

  (1) the debtor is not a debtor in possession;
  (2) the case originally was commenced as a involuntary case under [Chapter 11]; or

  (3) the case was converted to a case [under Chapter 11] other than on the debtor's request.

11 U.S.C. § 1112(a). None of these circumstances exist here.

**4.** The Court cannot determine the exact date of her resignation.

cy court to allow its counsel to withdraw from the case.

At a hearing on April 3, 2002, the bankruptcy court overruled the debtor's motion to reconsider and granted permission for the debtor's counsel to withdraw. *See* Doc. # 400 in Case No. 94–21190–11–JTF.[5] On April 29, 2002, the bankruptcy court entered an order which reflected its rulings. *See* Doc. # 408 in Case No. 94–21190–11–JTF. No party sought to appeal the bankruptcy court decision to deny the debtor's motion to convert.[6]

On April 10, 2002, the United States Trustee asked the bankruptcy court to appoint a Chapter 11 Trustee or dismiss the case.[7] *See* Doc. # 403 in Case No. 94–21190–11–JTF. The United States Trustee noted that the debtor had no representative or counsel and that under D. Kan. Bankruptcy Rule 9010.1, a corporation "may appear and participate only through an attorney in an adversary, contested matter or other court hearing involving the questioning of a witness or a presentation to the court."

On July 5, 2002, the OTS filed a motion to require Blackwell Sanders and Henry to return all monies which they received from the bankruptcy estate. *See* Doc. # 426 in Case No. 94–21190–11–JTF. In the motion, the OTS argued that the debtor must satisfy its Section 365(o) obligation before

it can pay administrative expenses. *Id.* at 1. The OTS noted that at all times since the commencement of the case, the bankruptcy estate had insufficient assets to effect a complete cure. *Id.* at 1–2. The OTS asserted that under the circumstances, the debtor was required to use all bankruptcy estate assets to effect the "maximum cure possible." *Id.* at 2.

On July 25, 2002, the bankruptcy court held a hearing on (1) the OTS motion to dismiss the debtor's defenses to its claim;[8] (2) the OTS motion to require the debtor to effect an immediate cure under Section 365(o);[9] (3) the United State Trustee motion to appoint a Chapter 11 Trustee; and (4) the OTS motion to require Blackwell Sanders and Henry to return all monies which they had received from the bankruptcy estate. *See* Doc. # 431 in Case No. 94–21190–11–JTF.[10] The bankruptcy court sustained the first two motions by the OTS—to dismiss the debtor's defenses and require an immediate cure under Section 365(o)—and deferred ruling on the remaining motions. *Id.*

On August 22, 2002, the bankruptcy court entered an order which reflected its rulings at the hearing on July 25, 2002. *See Order* (Doc. # 433) in Case No. 94–21190–11–JTF. The order dismissed the debtor's remaining defenses to the OTS

---

5. The bankruptcy court subjected its order to any objections by the debtor or its insider creditors. *See id.* Although the record is unclear, it appears that no one objected to the withdrawal.

6. As noted, the debtor had no representative or counsel at this time.

7. As discussed *infra,* the bankruptcy court did not rule on the motion until November 27, 2002. Ordinarily the debtor, as debtor-in-possession, remains in possession of a Chapter 11 bankruptcy estate. Section 1104 of the Bankruptcy Code authorizes the court to ap-

point a Chapter 11 Trustee for cause or if such appointment is in the interests of creditors, equity security holders and other interests of the estate. 11 U.S.C. § 1104(a).

8. The OTS filed this motion on August 10, 1995, before the earlier appeals. *See* Doc. # 103 in Case No. 94–21190–11–JTF.

9. The OTS filed this motion on February 9, 1996, before the earlier appeals. *See* Doc. # 133 in Case No. 94–21190–11–JTF.

10. The record does contain a transcript of the hearing.

proof of claim for "non-prosecution."[11] *See id.* at ¶ 1. In addition, the order required the debtor to "effect the maximum cure possible" on its capital maintenance obligation to the OTS. *Id.* at ¶ 2. The order did not specify a date for compliance, providing only that:

the Debtor shall commence its cure by immediately paying over to the Federal Deposit Insurance Corporation in its capacity as Receiver for OPSL, all present assets of the bankruptcy estate and all additional assets that accrue to the bankruptcy estate between now and the time the Debtor's cure is completed.

*Id.* at 2. The bankruptcy court subjected its order to a future ruling on the OTS motion regarding the return of monies by Blackwell Sanders and Henry, stating as follows:

This Order shall not be read to express any opinion or contain any ruling concerning the merits of the OTS's pending motion for determination and order requiring the Debtor's former counsel and former representative to return the fee and expense monies they have received from this bankruptcy estate, for use by the Debtor in effecting its cure.

*Id.* The Court allowed the parties time for further briefing and scheduled oral argument on the OTS motion.

At oral argument, the bankruptcy court noted that Blackwell Sanders and Henry had properly performed their employment, and that the OTS did not assert that they had acted in bad faith.[12] *See* Doc. # 445 at 57–58 in Case No. 94–21190–JTF. It concluded that "Section 365(*o*) of the Bankruptcy Code does not preclude the award or payment of fees or expenses to the debtor's former counsel and former representative under the facts of this case." Accordingly, the bankruptcy court found that the debtor could pay Blackwell Sanders and Henry before attempting to cure its capital maintenance deficit. *See id.* at 59–60.

On November 27, 2002, the bankruptcy court entered an order which formally overruled the OTS motion. *See Order And Journal Entry Concerning September 26, 2002 Evidentiary Hearing* (Doc. # 444) at ¶ 3 in Case No. 94–21190–JTF.[13] In the same order, the bankruptcy court approved pending requests by Blackwell Sanders and Henry for payment of additional fees and expenses.[14] *See id.* at ¶¶ 4–5.

Also on November 27, 2002, the bankruptcy court sustained the motion by the United States Trustee to appoint a Chapter 11 Trustee. *See Order* (Doc. # 443) in Case No. 94–21190–11–JTF. The bankruptcy court stated that the appointment was "for the purpose of making distribution of funds to the administrative expense claimants, and to perform any other neces-

---

11. As noted, the debtor had no representative, counsel or trustee at the time. On January 30, 2002, at oral argument on the debtor's motion to convert, debtor's counsel stated that the debtor still believed that its four remaining defenses were valid. *See* Doc. # 390 at 4 in Case No. 94–21190–JTF.

12. Although the record is not clear, it appears that administrative fees and expenses for Blackwell Sanders and Henry total about $180,000.00, of which about $114,000.00 has been paid. *See* Doc. # 445 at 57 in Case No.

94–211990–JTF. Thus about $66,000.00 remains unpaid ($180,000.00—$114,000.00 = $66,000.00).

13. Although the title of the resulting order refers to an evidentiary hearing, the transcript indicates that the hearing involved only oral argument. *See* Doc. # 445 in Case No. 94–21190–JTF.

14. The bankruptcy court subjected its approval to objections to line-item entries.

sary administrative functions."[15] *Id.*

On December 5, 2002, the bankruptcy court extended to December 27, 2002 the time for the OTS to appeal the two orders which it had entered on November 27, 2002. *See Order* (Doc. #449) at ¶ 1 in Case No. 94–21190–11–JTF. In addition, the bankruptcy court stayed execution of both orders pending a decision on appeal. *See id.* at ¶¶ 2–3.

On February 10, 2003, this Court granted the OTS leave to appeal both bankruptcy court orders of November 27, 2002. *See Order* (Doc. #2) in *OTS v. Overland Park Fin. Corp.*, Case No. 03–MC–202–KHV. On February 14, 2003, the OTS filed this appeal, challenging both orders. The OTS subsequently dismissed its appeal of the order appointing a Chapter 11 Trustee.[16] *See Order Dismissing Portion Of Appeal* (Doc. #5) filed March 24, 2003 in Case No. 03–2070–KHV. Thus the only issue on appeal is the OTS challenge to the *Order And Journal Entry Concerning September 26, 2002 Evidentiary Hearing* (Doc. #444) in Case No. 94–21190–JTF.

### Analysis

After thoroughly reviewing the record in this case, the Court reconsiders its decision to exercise jurisdiction over this interlocutory appeal. The Court granted as unopposed the OTS motion for leave to appeal. *See Order* (Doc. #2) in Case No. 03–MC–202–KHV. At that time, the record before the Court did not reveal that the debtor was unrepresented and therefore could not oppose the motion. Moreover, the record did not indicate that significant legal issues remain unresolved or

beyond the scope of the proposed interlocutory appeal.

Pursuant to 28 U.S.C. § 158(a)(3), the Court exercises discretion whether to grant leave to appeal an interlocutory order of the bankruptcy court. The Bankruptcy Appellate Panel for the Tenth Circuit has held that "[l]eave to hear appeals from interlocutory orders [under 28 U.S.C. § 158(a)(3)] should be granted with discrimination and reserved for cases of exceptional circumstances." *In re Midgard Corp.*, 204 B.R. 764, 769 (10th Cir. BAP 1997). In determining whether an interlocutory appeal of a bankruptcy court order is appropriate, the Court generally applies the standards set forth in 28 U.S.C. § 1292(b). *See In re Sunflower Racing, Inc.*, 218 B.R. 972, 977 (D.Kan.1998). Under those standards, the Court may certify an interlocutory appeal when (1) the order involves a controlling issue of law; (2) an immediate appeal from the order may materially advance the ultimate termination of the litigation; and (3) a substantial ground for difference of opinion exists with respect to the question of law. *Id.*

The OTS asks this Court to determine that (1) because the debtor cannot completely cure its capital maintenance deficit, Section 365(*o*) requires it to effect the "maximum cure possible;" and (2) Section 365(*o*) precludes the debtor from paying administrative fees and expenses to its counsel and representative. The first issue—whether Section 365(*o*) requires the debtor to effect the "maximum cure possible"—is not within the scope of the proposed interlocutory appeal. On August 22,

---

**15.** It is unclear whether this language purports to limit duties that a Chapter 11 Trustee would otherwise perform.

**16.** On January 22, 2003, the United States Trustee appointed Carl R. Clark as Chapter

11 Trustee "for the purpose of making distribution of funds to the administrative expense claimants, and to perform any other administrative functions." Doc. #465 in Case No. 94–21190–11–JTF.

2002, the bankruptcy court ordered the debtor to effect the "maximum cure possible." *See Order* (Doc. # 433) at ¶ 2 in Case No. 94–21190–11–JTF. No party sought leave to appeal that ruling and the issues decided therein are not properly within the scope of the proposed interlocutory appeal.[17]

■ Only the second issue—whether Section 365(*o*) precludes the debtor from paying administrative fees and expenses—is within the scope of the proposed interlocutory appeal. The OTS sought—and this Court granted—permission to appeal the *Order And Journal Entry Concerning September 26, 2002 Evidentiary Hearing* (Doc. # 444) filed November 27, 2002 in Case No. 94–21190–JTF. *See Motion Of The Office Of Thrift Supervision For Leave To Appeal And For Related Relief* (Doc. # 46) filed December 26, 2002 in Case No. 94–21190–JTF and *Order* (Doc. # 2) filed February 10, 2002 in Case No. 03–MC–202–KHV. In that order, the bankruptcy court found that Section 365(*o*) "does not preclude the award or payment of fees or expenses to the debtor's former counsel and former representative under the facts of this case." *Order And Journal Entry Concerning September 26, 2002 Evidentiary Hearing* (Doc. # 444) at ¶ 2 in Case No. 94–21190–JTF.

Resolution of the latter issue necessarily depends upon a determination that Section 365(*o*) imposes a duty on the debtor to pay the "maximum cure possible." In the earlier appeal in this case, the Tenth Circuit determined that Section 365(*o*) requires the debtor to assume and cure its capital maintenance commitment before it may proceed with Chapter 11 and acquire Chapter 11 protection. *Overland Park,* 236 F.3d at 1251–53. The OTS insists that the Tenth Circuit implicitly ruled that Section 365(*o*) requires the debtor effect the "maximum cure possible." *See Brief Of Appellant* (Doc. # 13) at 14 filed May 28, 2003 in Case No. 03–2070–KHV. The OTS argues that if the Tenth Circuit did not so decide, it would not have remanded the case to the bankruptcy court to resolve the debtor's remaining defenses. *See id.* The Court disagrees. A more plausible reading of the remand is that the Tenth Circuit recognized that if the debtor prevailed on a defense to the OTS claim, Section 365(*o*) would not apply and the debtor could proceed with Chapter 11 and acquire Chapter 11 protection. *See Overland Park,* 236 F.3d at 1253.

In determining when the duty to assume a cure matures and attaches under Section 365(*o*), the Tenth Circuit relied on *In re Firstcorp, Inc.,* 973 F.2d 243 (4th Cir. 1992). *See Overland Park,* 236 F.3d at 1253. In *Firstcorp,* the Fourth Circuit Court of Appeals found that under Section 365(*o*): (1) both the assumption and the duty to cure are mandatory; (2) both the assumption and duty to cure occur by operation of law; and (3) the obligation to cure attaches "immediately." *Id.* at 247.[18] The Fourth Circuit concluded that the assumption and duty to cure requirements of Section 365(*o*) are "prerequisites to obtaining Chapter 11 protection." The *Firstcorp* court further stated:

---

**17.** The Court notes that at the time of the order, the debtor had no representative, counsel or trustee.

**18.** The *Firstcorp* court noted that the purpose of Section 365(*o*) is "to prevent institution-affiliated parties from using bankruptcy to evade commitments to maintain capital reserve requirements of a Federally insured depository institution." *Firstcorp,* 973 F.2d at 246 (quoting H.R.Rep. No. 681(I), 101st Cong., 2d Sess. 179 (1990), *reprinted in,* 1990 U.S.C.C.A.N. 6472, 6585). The statute accomplishes that goal by preventing the debtor from rejecting any such commitment as an executory contract under Section 365(a). *Id.*

If a debtor cannot "immediately" cure a deficit under a capital maintenance commitment that existed at the time of a bankruptcy filing, then § 365(*o*) requires that debtor to proceed not under Chapter 11 but under Chapter 7, to which § 365(*o*) does not apply.

*Id.* at 247. Quoting the above language, the Tenth Circuit held that "before a debtor may proceed with Chapter 11, and acquire Chapter 11 protection, the debtor's commitment to assume and cure its capital deficit must be satisfied." *Overland Park*, 236 F.3d at 1253.

The OTS assumes that because the debtor initially proceeded under Chapter 11, Section 365(*o*) automatically requires it to pay all bankruptcy estate assets to effect the "maximum cure possible," regardless whether it can effect a complete cure. *See Brief Of Appellant* (Doc. # 13) at 19 (arguing that debtor could avoid this result by filing under Chapter 7 and seeking determination that Section 365(*o*) did not apply before converting to Chapter 11). Neither the statute nor the case law mandates this result. Both *Firstcorp* and the Tenth Circuit held that "[i]f a debtor cannot 'immediately' cure a deficit under a capital maintenance commitment that existed at the time of a bankruptcy filing, then § 365(*o*) requires that debtor to proceed not under Chapter 11 but under Chapter 7, to which § 365(*o*) does not apply." *Overland Park*, 236 F.3d at 1253 (quoting *Firstcorp*, 973 F.2d at 247).

On February 13, 2002, the bankruptcy court overruled Financial's motion to convert the case to one under Chapter 7, finding that in light of the Tenth Circuit ruling, it should determine the debtor's remaining defenses to the OTS claim. *See*

Doc. # 398 in Case No. 94–21190–11–JTF. Six months later, on August 22, 2002—when the debtor was unrepresented—the bankruptcy court dismissed those defenses for "non-prosecution." *Order* (Doc. # 433) in Case No. 94–21190–11–JTF. The bankruptcy court further ordered the debtor to effect "the maximum cure possible" on its capital maintenance obligation to the OTS. *Id.* at ¶ 2. The bankruptcy court did not specify a date for compliance. Rather, the court stated:

the Debtor shall commence its cure by immediately paying over to the Federal Deposit Insurance Corporation in its capacity as Receiver for OPSL, all present assets of the bankruptcy estate and all additional assets that accrue to the bankruptcy estate between now and the time the Debtor's cure is completed.

*Id.* at 2.

The bankruptcy court's earlier rulings are not within the scope of the proposed interlocutory appeal.[19] Under the Tenth Circuit ruling, it seems clear that the debtor cannot proceed under Chapter 11 because it cannot effect a complete cure under Section 365(*o*). *Overland Park*, 236 F.3d at 1253 (quoting *Firstcorp*, 973 F.2d at 247). The bankruptcy court, however, has not yet decided how the debtor's breach of its duty to cure will bear on this issue. In light of the circumstances, it would not materially advance the ultimate termination of this litigation for this Court to decide the relative priority of administrative expenses vis a vis a duty to pay under Section 365(*o*)—which may not even apply.

The Court therefore vacates its decision to grant the OTS leave to appeal the *Order*

---

**19.** Moreover, the debtor was unrepresented at the time the bankruptcy court entered the order of August 22, 2002. Now that the bankruptcy court has appointed a Chapter 11 Trustee, the trustee can presumably advance the interests of the bankruptcy estate before the bankruptcy court and/or on appeal.

*And Journal Entry Concerning September 26, 2002 Evidentiary Hearing* (Doc. # 444) which the United States Bankruptcy Court for the District of Kansas entered November 27, 2002 in Case No. 94–21190–11–JTF.

**IT IS SO ORDERED.**