**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RICARDO JOSE PEREA ARGUELLO,

    Plaintiff - Appellant,

v.

MARKWAYNE MULLIN[1]; UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; TODD
LYONS,

    Defendants - Appellees.

No. 25-4140
(D.C. No. 2:25-CV-00786-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **BACHARACH**, and **FEDERICO**, Circuit Judges.
_____

Ricardo Jose Perea Arguello, a foreign national, appeals the district court's

denial of his motion for a temporary restraining order. Arguello sought to enjoin the

government from removing him under a reinstated order of removal while his asylum

---

[1] On March 24, 2026 Markwayne Mullin became Secretary of Homeland
Security. Consequently, his name has been substituted for Kristi Noem per Fed. R.
App. P. 43(c)(2).

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

application was pending.  During the pendency of this appeal, however, Arguello's

asylum application was denied, and the order reinstating his prior removal order was

rescinded.

Because we can no longer grant Arguello relief, we **GRANT** the government's

motion to dismiss and **DISMISS** Arguello's appeal as moot.[2]

# I.    Background

Arguello is a Venezuelan citizen who illegally entered the United States and

was removed in 2023.  He returned to a port of entry in 2024, despite being

inadmissible under the Immigration and Nationality Act until 2028.  Customs and

Border Patrol informed Arguello of his previous deportation order but paroled him

into the country.  Border Patrol then initiated removal proceedings against him, and

Arguello filed an application seeking asylum, withholding of removal, and protection

under the Convention Against Torture (CAT).

In September 2025, Immigration and Customs Enforcement agents arrested

Arguello.  The Department of Homeland Security (DHS) issued a notice of intent to

reinstate Arguello's prior order of removal under a provision permitting

reinstatement when an alien "has reentered the United States illegally."  8 U.S.C.

§ 1231(a)(5).  Arguello sought a TRO from the district court to prevent his removal

"pending adjudication of his pending asylum, withholding of removal, and

Convention Against Torture (CAT) claims."  App. 12.  The district court initially

---

[2] We also **GRANT** Arguello's motion to proceed *in forma pauperis*.

granted the TRO, but after a hearing, denied it. Arguello appeals the denial, contending the district court erred in concluding that DHS could reinstate his prior removal order under § 1231(a)(5) because Arguello reentered "legally" when Border Patrol paroled him into the country.

While this appeal was pending, Arguello successfully moved to reopen his removal proceedings in immigration court.[3] After multiple hearings, DHS moved to pretermit Arguello's asylum application, contending that Arguello did not need protection in the United States because he was subject to asylum cooperative agreements in Ecuador and Honduras. On January 28, 2026, the immigration court granted DHS's motion and entered a new removal order against Arguello. Arguello did not appeal that removal order to the Board of Immigration Appeals (BIA) or to this court. Thus, the new removal order is now final and enforceable. *See* 8 C.F.R. § 1003.3(a)(2) (2026) (requiring appeal to BIA within 30 days); *id.* § 1241.1 (2026) (stipulating that an order of removal becomes final upon dismissal by BIA or expiration of the time allotted for appeal); 8 U.S.C. § 1252(b)(1) (requiring appeal to federal court within 30 days of final order of removal).

---

[3] We take judicial notice of Arguello's immigration records that relate to this appeal. *See Hutchinson v. Hahn*, 402 F. App'x 391, 394–95 (10th Cir. 2010) ("[A] court may take judicial notice of its own records as well of those of other courts, particularly in closely-related cases."); *cf.* FED. R. EVID. 201 (permitting courts to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

DHS rescinded its notice of intent to reinstate Arguello's prior removal order, and the government has now filed a motion to dismiss Arguello's appeal as moot.

## II.    Discussion

We have no jurisdiction to entertain an appeal that is moot. *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)).

"A case is moot when it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1254 (10th Cir. 2001) (citation modified). As a result, even if a case "poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016) (citation modified). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown*, 822 F.3d at 1165 (quoting *Campbell–Ewald Co. v. Gomez*, 577 U.S. 153, 161–62 (2016)). When a plaintiff seeks injunctive relief, "the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties." *Schell*, 814 F.3d at

4

1114.; *cf. Dias v. City and County of Denver*, 567 F.3d 1169, 1176–77 (10th Cir. 2009) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974))).

Despite this, Arguello urges us to apply an exception to mootness: voluntary cessation. The "exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quoting *Chihuahuan Grasslands Alliance v. Kempthorne,* 545 F.3d 884, 892 (10th Cir. 2008)). "Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "For the voluntary cessation exception to apply, 'we must be convinced that the allegedly wrongful behavior could not *reasonably* be expected to recur . . . not that there is no possibility.'" *Smith v. Becerra*, 44 F.4th 1238, 1250 (10th Cir. 2022) (quoting *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 n.20 (10th Cir. 2019)).

The party asserting mootness bears the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Rio Grande Silvery Minnow*, 601 F.3d at 1116 (alteration in original) (quoting

5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  When that party is the government, that burden is lightened by a good-faith presumption.  "[C]ourts are more apt to trust public officials than private defendants to desist from future violations."  *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) (quoting 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.7 at 333 (3d ed. 2008)).  And "government 'self-correction provides a secure foundation for mootness so long as it seems genuine.'"  *Id.* (quoting *Brown*, 822 F.3d at 1167–68).  "In practice," absent "*clear showings* of reluctant submission by governmental actors and a desire to return to the old ways," governmental officials may discontinue challenged practices and moot a case.  *Brown*, 822 F.3d at 1167 (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1116–17).

With this framework in mind, we turn to the parties' arguments.  The government contends that this appeal is moot because Arguello has received the relief he requested in district court, and regardless, DHS rescinded the reinstatement order that provided the legal basis for Arguello's appeal.  We agree.

We cannot grant effectual relief to Arguello, and because we cannot do so, this appeal is moot.  Arguello sought a TRO to enjoin the government "from removing [him] from the United States pending adjudication of his pending asylum, withholding of removal, and Convention Against Torture (CAT) claims."  App. 12.  Arguello has received this relief.  After the district court denied his motion for a TRO, Arguello successfully reopened his removal proceedings in immigration court,

6

presented his asylum application, and received a final order regarding that application. His second asylum petition has been fully processed, and the time for appeal has run. Because Arguello has received his requested relief, he presents no live case or controversy for this court to hear. *See Schell*, 814 F.3d at 1114.

Arguello protests that he has not received his requested relief because his asylum application was *pretermitted*, not adjudicated. Pretermitted in this context means that Arguello's application for asylum was denied because regulations make aliens protected by asylum cooperative agreements ineligible to apply for asylum in the United States and requires their removal to the country of the agreement. *See* 8 C.F.R. § 1240.11(h)(1)–(3) (2026). But even if we were to credit Arguello's distinction, we cannot provide him relief.

We have no means to provide Arguello relief because his underlying claim concerns the legality of an obsolete order. Because Arguello shows no continuing adverse effects from that now-rescinded order, the merit of Arguello's legal claim has been obviated. Arguello shows no ongoing or imminent injury from the rescinded order, so he presents no case or controversy for purposes of granting injunctive relief. *Dias*, 567 F.3d at 1176–77.

Despite the rescission of the order underlying his legal claim, and despite seemingly receiving his requested relief, Arguello contends that we can still provide relief. He urges that we can "review and correct the district court's legal determinations regarding Appellees' authority to treat [his] parole as an unlawful reentry and invoke reinstatement." Opp'n. to Mot. to Dismiss at 1, Dkt. 46. But this

other "relief" Arguello seeks is nothing more than an advisory opinion. Because the rescinded reinstatement order "cannot affect the rights of [Arguello] in the case," a determination of the legality of that order is advisory. *United States v. Muhtorov*, 20 F.4th 558, 608 (10th Cir. 2021) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

Arguello counters that a legal determination would not be advisory because we could remove the severe statutory consequences attached to reinstated orders—*e.g.*, ineligibility for relief on the order and a prohibition against review or reopening. *See* 8 U.S.C. § 1231(a)(5). But the statutory consequences that flow from reinstated orders *were* removed—when DHS rescinded the notice to reinstate the prior removal order. We fail to see how determining the validity of a rescinded order would provide Arguello any relief. He has received the relief he requested, and even if he had not, DHS's intervening rescission makes any legal resolution about Arguello's reinstated order merely advisory.

As a last resort, Arguello contends the appeal is not moot under the voluntary cessation exception. But the exception does not apply.

First, we have no reason to expect that DHS's alleged violation, reinstating Arguello's prior removal order, will recur. *See Rio Grande Silvery Minnow*, 601 F.3d at 1115. DHS's rescission of the disputed order "provides a secure foundation for mootness so long as it seems genuine." *Id.* at 1118 (citation modified). And it does. Upon the immigration judge's issuance of a separate final removal order, DHS rescinded the reinstatement order. The new final order is now both unreviewable and

8

enforceable because Arguello did not appeal the order to the BIA or federal court within the 30-day timelines set by law.

Arguello asserts that DHS's rescission "suggests litigation-driven conduct" rather than intent to abandon the prior order because the government conceded in its dismissal motion that it was "not aware of the updates to Arguello's immigration proceedings until preparing for oral argument." Opp'n. to Mot. to Dismiss at 7, Dkt. 46. But the government's remark shows nothing more than that information travels slowly across the executive branch. Arguello also highlights that the rescission is undated and unaccompanied by an affidavit or explanation by a government official. But even granting that DHS failed to create a thorough paper trail, the fact remains that the word "RESCINDED" is stamped across the notice of intent to reinstate. Mot. to Dismiss, Ex. 9, Dkt. 44. And DHS possesses a separate, enforceable final order. Because record evidence provides neither motive nor a "*clear showing*[] of reluctant submission by [DHS] and a desire to return to the old ways," we do not presume DHS intends to return to or rely on the rescinded order. *Brown*, 822 F.3d at 1167 (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1117).

Second, DHS's rescission has "completely and irrevocably eradicated the effects of the alleged violation." *See Rio Grande Silvery Minnow*, 601 F.3d at 1115. This prong "requires little discussion here." *Id.* at 1120. Arguello briefly argues that the reinstatement order may have affected his custody. While it is true that individuals subject to reinstated removal orders are governed by a statutory framework distinct from those subject to ordinary removal orders, we see no custody

9

distinction between the two.  *See* 8 U.S.C. § 1231(a).  As a result, we identify no lingering effects from DHS's rescinded reinstatement order.

The government has persuaded us that intervening events have rendered this case moot and that the voluntary cessation exception to mootness does not apply.

## III.   Conclusion

For these reasons, we grant Arguello's motion to proceed *in forma pauperis* on appeal, and we grant the government's motion to dismiss Arguello's appeal as moot. *Cf. Gunter v. Pulsipher*, No. 19-4060, 2020 WL 1488164, at *2 (10th Cir. Jan. 15, 2020) (granting appellant *in forma pauperis* status and dismissing the appeal for lack of jurisdiction).

No one requests that we vacate the underlying district court order from which Arguello appeals.  That order's mootness was caused, at least in part, by both the government's voluntary rescission of its reinstatement order and Arguello's pursuit and receipt of the relief he requested in the TRO.  After weighing the equities of the case, we decline to sua sponte vacate the district court's order.  *See Schell*, 814 F.3d at 1121 (declining to vacate for similar reasons).

Entered for the Court

Timothy M. Tymkovich
Circuit Judge